IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| MACREGEN, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:19CV591 |
| | ) | |
| W. NEAL BURNETTE III, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Plaintiff MacRegen, Inc.'s Motion for Attorneys' Fees and Costs [Doc. #20] occasioned by the setting aside of the Clerk's entry of default against Defendant W. Neal Burnette III ("Burnette"). For the reasons explained below, the motion is granted in part and denied in part in that MacRegen, Inc. ("MacRegen") is awarded attorney's fees, but the requested fees are reduced.

MacRegen filed the instant action seeking a declaratory judgment as to its contractual obligations to Burnette. (See generally Compl. [Doc. #1].) Burnette was served on June 17, 2019 via a Federal Express delivery that his wife received but about which she failed to inform Burnette. (Decl. of W. Neal Burnette III, PhD ¶ 3 [Doc. #15-1].) He learned of the suit more than a week later upon receipt of an affidavit of service and "immediately sought legal representation." (Id. ¶ 4.) He "was informed and believed that prospective counsel was prepared to represent [him]" only to learn on or about July 8, 2019 "that prospective counsel was unable to represent [him]". (Id. ¶¶ 5-6.) Because Burnette failed to answer or otherwise

respond to the Complaint timely, MacRegen sought entry of default against Burnette, which was entered on July 11, 2019. (Mot. for Entry of Default [Doc. #6]; Clerk's Entry of Default [Doc. #8].) Aside from MacRegen's certificate of service filed on July 12, 2019 recording the service of the Entry of Default on Burnette, nothing was filed in the case until October 3, 2019 when MacRegen moved for default judgment. (See generally Docket; Mot. for Default J. [Doc. #10].)

Unbeknownst to the Court, though, Burnette successfully secured (current) counsel, Brad Hill ("Hill"), on July 22, 2019, (Decl. of Burnette ¶ 8), who emailed MacRegen's counsel, David Dorey ("Dorey") and Pamela Duffy ("Duffy"), the same day of his intent to move to set aside the default "by the end of the day tomorrow" and requested MacRegen's position on the motion, (E-mail from Brad Hill to David Dorey (July 22, 2019) [Doc. #28-1]). Apparently the parties' counsel discussed the matter over the telephone, (see Def.'s Mem. in Opp'n at 4 [Doc. #26]), until August 27, 2019 when Dorey emailed Hill that MacRegen could not consent to setting aside the default (after explaining his reasoning but welcoming further discussion on the matter if Hill could supply cases in support of his position), (E-mail from David Dorey to Brad Hill (Aug. 27, 2019 3:46 PM) [Doc. #17-1]). In addition, Dorey conveyed his client's interest in discussing resolution of the matter, apparently a continuation of an earlier conversation between counsel, (E-mail from David Dorey to Brad Hill (Aug. 27, 2019 3:58 PM) [Doc.

2

#17-1]), an invitation to which Hill responded the following day seeking further discussion, (E-mail from Brad Hill to David Dorey (Aug. 28, 2019) [Doc. #17-1]).

Nevertheless, having learned on August 27 that MacRegen would not consent to setting aside the default, Hill did not move the Court to do so. Nearly a month later, on September 22, Dorey emailed Hill, " . . . I am somewhat surprised I have not seen a motion to open the default. What are your plans in that respect? While I left the timing issue open for some time to talk, I am not sure I understand what's left to do for you to file your motion." (E-mail from Dorey to Hill (Sept. 22, 2019) [Doc. #16-1].) But that inquiry failed in its attempt to encourage Hill to move things along. By October 3, Hill had yet to move to set aside default, so MacRegen moved for default judgment. Not until six days later did Hill make a notice of appearance before the Court and move to set aside entry of default, (Notice [Doc. #13]; Mot. to Set Aside Default [Doc. #14]), prompting the Clerk to remove the motion for default judgment from the Court's consideration, (see Text Entry (Oct. 10, 2019)). The motion to set aside entry of default was granted. (See generally Mem. Op. & Order [Doc. #18].)

MacRegen has moved for an award of attorney's fees[1] in the amount of $16,450.00 "associated with filing its Motion for Entry of Default, Motion for

---

[1] Although MacRegen entitles its motion as one for "Attorneys' Fees and Costs", it clarifies in its Reply that it "has not sought recovery of any costs" and that although "[t]he costs in Ms. Duffy's affidavit were not redacted, . . . the total amount to be recovered only includes attorneys' fees." (Pl.'s Reply at 11 [Doc. #28].) Therefore, Burnette's challenges to MacRegen's recovery of costs, (Def.'s Mem. in Opp'n at 15-16), are not discussed.

Default Judgment, and having to respond to Defendant's Motion to Set Aside Entry of Default". (Mot. at 3.) Burnette opposes the motion because there was no bad faith; instead Hill's discussions with MacRegen's counsel about settlement and setting aside the entry of default "were designed to avoid the very fees and costs that Plaintiff now deems to be an appropriate sanction." (Def.'s Mem. in Opp'n at 4-5.) In the alternative, were fees to be awarded, he argues that they should be awarded only for MacRegen's Motion for Default Judgment because it is the only action attributable to Hill's unreasonable delay. (Id. at 6-7.) He also contends that it would be "unjust" to award fees for MacRegen's opposition to Burnette's motion because of the parties' "robust discussions" about setting aside default to which MacRegen ultimately would not consent. (Id. at 6-7.)

As the Court explained in the Memorandum Opinion and Order granting Burnette's motion to set aside the entry of default, "[l]ess drastic sanctions [than denying Burnette's motion] are available such as attorney fees or costs associated with filing MacRegen's Motion for Entry of Default and Motion for Default Judgment and having to respond to Burnette's Motion." (Mem. Op. & Order at 12 (citing Lolatchy v. Arthur Murray, Inc., 816 F.2d 951, 953-54 (4th Cir. 1987).) Such is the case here where months passed after default was entered before Hill noticed his appearance in the matter and moved to set aside the entry of default. Although Burnette was found to be "mostly blameless" for the entry of default, he is a sophisticated individual, (see Decl. of Burnette, Ex. A Curriculum Vitae), whose actions to some degree caused MacRegen to move for entry of default after he

4

failed to answer or otherwise respond to the Complaint.  Then, Hill "failed to act with reasonable promptness in attempting to set aside the entry of default." (Mem. Op. & Order at 7.)  Parties' discussions about resolving a matter are to be encouraged, but counsel must remain aware of the consequences of failing to take certain actions before the Court in a timely manner.  Here, Hill takes issue with awarding fees for time during which MacRegen was deciding if it would consent to Burnette's motion.  But, that consideration was occasioned entirely by Burnette's default.  After being notified that MacRegen would not consent to the motion, Hill did not move the Court to set aside default.  After receiving Dorey's follow-up email the following month asking about his plans to move to set aside default, Hill still did not do so.  Faced with Hill's inaction, MacRegen moved for default judgment.  An award of attorney's fees for all stages of Burnette's default is an appropriate sanction.

The next step is to determine whether MacRegen's requested attorney's fees are reasonable.  MacRegen's North Carolina counsel, Pamela S. Duffy, and Delaware counsel, Dorey, each submitted a sworn statement with their respective hourly rates and those of their colleagues who also worked on this matter, the conclusion that their rates are reasonable, and direction to their profiles on their respective firms' websites. (Aff. of Pamela S. Duffy [Doc. #21]; Decl. of David A. Dorey, Esq. [Doc. #22].)  Dorey and Duffy also attached billing invoices.

Burnette argues that MacRegen has failed to show the reasonableness of its request because it neglected to assess the factors from Robinson v. Equifax Info.

5

Servs., LLC, 560 F.3d 235, 243 (4th Cir. 2009), and did not submit the requisite evidence of prevailing market rates, particularly troublesome given Dorey's hourly rate. (Def.'s Mem. in Opp'n at 7-12.) He also challenges the hours for which MacRegen's counsel is seeking compensation, such as the inclusion of settlement discussions, hours charged for communications among MacRegen's attorneys, and ambiguity caused by the use of "block-billing". (Id. at 12-15.)

As is well understood, a court begins its assessment of the reasonableness of attorney's fees by calculating "a lodestar figure[2] by multiplying the number of reasonable hours expended times a reasonable rate", Robinson, 560 F.3d at 243, which begs the question, "What is reasonable?". To answer that question, a court is "guided" by these factors:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

---

[2] Typically, after determining the lodestar figure, the court should subtract fees spent on unsuccessful claims and then award a percentage of the remaining amount. Robinson, 560 F.3d at 244. Given that this award of attorney's fees is a sanction for Burnette's default, these subsequent steps do not easily apply. Nevertheless, as explained, deductions are made for certain hours billed by MacRegen's counsel.

6

Id. at 243-44. Because of the stage of these proceedings, several factors do not apply here[3], but those that do are analyzed below.

Burnette understandably criticizes MacRegen's motion because it does not apply the Robinson factors to any helpful degree. Nevertheless, counsel did submit detailed billing invoices for their work on this matter, along with their sworn statements, allowing for a review of the work they completed. The block entries, as Burnette describes them, are sufficient in most cases to determine the reasonableness of the time spent on this matter, and those entries that are troublesome are addressed below.

Neither Duffy (nor her colleagues) nor Dorey billed for unnecessary work or excessive hours; their time reflects the fact that this contract matter and Burnette's default are not particularly novel or difficult. When appropriate, work was assigned to Duffy's colleagues with lower hourly rates than hers. While the skill required is no greater than other commercial litigation, MacRegen's counsel had to balance ongoing discussions with each other and Hill about resolving the matter, the uncertainty of Burnette's moving the Court to set aside the entry of

---

[3] For example, there is no argument about or evidence of opportunity costs; time limitations imposed by circumstances or the client, although the facts show that counsel acted reasonably in seeking entry of default and in affording Burnette an opportunity to move to set aside the default before MacRegen ultimately moved for default judgment; the undesirability of the case; or the nature and length of counsel's relationship with MacRegen. And, the relevance of counsel's expectations at the outset of litigation and results obtained is limited here, although MacRegen unsuccessfully challenged Burnette's motion to set aside entry of default; however, that motion was necessitated by Burnette's and Hill's own delayed actions.

7

Case 1:19-cv-00591-NCT-JLW   Document 31   Filed 06/02/21   Page 7 of 13

default, and the merits of Burnette's defense in support of his motion. And, it appears from the invoices and counsel's statements that they did this professionally and efficiently. Furthermore, counsel did not bill for what Burnette describes as duplicative or redundant work. It is not uncommon for a party's attorneys to discuss a matter with each other to determine the best strategy for their client, especially when Dorey is in Delaware (where MacRegen is incorporated) and Duffy is serving as North Carolina counsel. Furthermore, the time billed for counsel's communications with each other is not unreasonable.

However, Duffy's invoices include time spent towards settlement, for which recovery is not appropriate. In addition, portions of several entries in Dorey's invoices are redacted without explanation or clarification, making it impossible to determine for that block entry the hours spent on tasks related to Burnette's default. Because Dorey made no effort to identify how much time associated with those redacted block entries is attributable to the default, time charged for those entries will be deducted in full. In addition to the time charged in his invoices, Dorey requests in his declaration an additional .7 hours for "adding to/revising these motion papers seeking counsel fees initially prepared by North Carolina counsel". (Decl. of Dorey ¶ 7.) Assuming such fees are recoverable, they are not reasonable here because the content of the "motion papers" is scant and the attorneys failed to provide the requisite evidence in support of their requested hourly rate (as explained below). Therefore, the additional .7 hours noted in Dorey's declaration will not be included in the recoverable hours.

8

The Fourth Circuit Court of Appeals considers "[d]etermination of the hourly rate . . . generally [to] be the critical inquiry . . . and the burden rests with the fee applicant to establish the reasonableness of a requested rate." Robinson, 560 F.3d at 244. "In addition to the attorney's own affidavits, the fee applicant must produce satisfactory specific evidence of the prevailing market rates in the relevant community for the type of work for which he seeks an award." Id. (emphasis omitted). Neither Duffy nor Dorey did so; instead, they simply attested to the reasonableness of their own fees and those of their colleagues. Nevertheless, "[i]n the absence of specific evidence regarding the prevailing market rate, the Court may establish a reasonable rate based upon its own knowledge and experience of the relevant market." Irwin Indus. Tool Co. v. Worthington Cylinders Wis., LLC, 747 F. Supp. 2d 568, 593 (W.D.N.C. 2010) cited in Burrs v. United Techs. Corp., No. 1:18-CV-491, 2019 WL 1430258, at *2 (M.D.N.C. Mar. 29, 2019). "The relevant market for determining the prevailing rate is ordinarily the community in which the court where the action is prosecuted sits." Rum Creek Coal Sales, Inc. v. Caperton, 31 F.3d 169, 175 (4th Cir. 1994).

Duffy, a Member/Director of Sharpless McClearn Lester Duffy in Greensboro, North Carolina, has been practicing law since 1991 primarily in commercial, employment, and trust/estate litigation. (Aff. of Pamela S. Duffy ¶¶ 2, 4.a.) She directs the Court to her biography on her law firm's website, https://www.sharplesslaw.com/professionals/pamela-s-duffy/, which notes her graduation from law school at the College of William and Mary and her recognition

9

in Woodword/White's The Best Lawyers in America in Commercial Litigation and in Litigation – Trusts & Estates (from 2011 to the present), Martindale-Hubbell AV Preeminent 5.0 out of 5 Peer Review Rating, Martindale-Hubbell Bar Register of Preeminent Women Lawyers, Business North Carolina Legal Elite (2019), and Selection to North Carolina Super Lawyers (2020). She has charged $320 per hour on this matter and avers "[o]n information and belief" that her rate and those of her colleagues are "within the range of rates charged by other attorneys in Guilford County for similar work." (Aff. of Duffy ¶¶ 4.a., 8.)

Her fellow Member of the firm Molly A. Whitlatch, whose time is also charged on this matter, has been practicing law since 2005 primarily in the areas of commercial litigation and trust/estate litigation. (Aff. of Duffy ¶ 4.b.) Duffy directs the Court to Whitlatch's biographical information on the firm's website, https://www.sharplesslaw.com/professionals/molly-a-whitlatch/, which notes her graduation from law school at Wake Forest University and her recognition in Best Lawyers as Lawyer of the Year – Litigation (2019, 2021), The Best Lawyers in America in Litigation – Trusts & Estate (2016-2021), North Carolina Super Lawyers (2019-2020), Business North Carolina magazine's Legal Elite (2018), and Triad Business Journal's 40 Business Leaders Under 40 (2014). She has charged $270 per hour on this matter. (Aff. of Duffy ¶ 4.b.)

Jessica B. Cox, Of Counsel at Duffy's firm, also worked on this matter, and she has been practicing law "for a total of over seven years" primarily in civil litigation and business torts, (Aff. of Duffy ¶ 4.c.), since graduating law school at

10

Duke University in 2006, https://www.sharplesslaw.com/professionals/jessica-b-cox/. She has charged $220 per hour in this matter. (Id.)

A review of recent opinions from this district assessing the reasonableness of attorney's fees confirms that the hourly rates of Duffy, Whitlatch, and Cox are reasonable. See, e.g., Carpet Super Mart, Inc. v. Benchmark Int'l Co., No. 1:18CV398, 2020 WL 4505670, at *12 (M.D.N.C. Aug. 5, 2020) (relying on the affidavit of a disinterested and experienced North Carolina commercial litigator, the experience and accolades of each respective attorney, and the Court's familiarity with rates in similar actions to find that an hourly rate of $405 for partner-level work and $290 for associate-level work in a commercial dispute were reasonable); Project Mgmt. Quality Servs., LLC. v. Eland Indus. Inc., No. 1:18CV412, 2019 WL 9853106, at *2-*3 (M.D.N.C. Apr. 3, 2019) (reviewing the affidavit of a disinterested and experienced litigation attorney, rates found to be reasonable in the Middle District of North Carolina, and counsel's background, experience, and reputation to find an hourly rate of $300 for partner-level work in commercial litigation reasonable); Burrs, 2019 WL 1430258, at *1-*2 (reducing requested rates of $585 per hour for partner-level work and $275 per hour for associate-level work to $350 per hour and $220 per hour, respectively, in an employment discrimination matter). Considering Duffy's and Whitlatch's experience and reputations and Cox's experience in their fields of practice, as well as rates found to be reasonable in this market for similar work, the Court approves the following requested rates: Duffy - $320 per hour; Whitlatch - $270 per hour; and Cox -

11

$220 per hour. MacRegen is awarded $7,754 in attorney's fees for their work related to Burnette's default.[4]

However, Dorey's requested rate of $830 per hour for similar work is unreasonable. Not only has he failed to establish the reasonableness of this rate for Delaware where he practices, but he has made no attempt to support the reasonableness of this request for the relevant market – the Middle District of North Carolina – or argued that under these circumstances it is reasonable to consider the rates in Delaware, see Rum, 31 F.3d at 175, 179. In response to Burnette's challenge on this issue, MacRegen replied that "[i]f the Court does not want to award Plaintiffs' Delaware counsel's rates, such rates can be adjusted to North Carolina market rates and awarded." (Pl.'s Reply at 7.) Dorey is a partner at Blank Rome LLP in Wilmington, Delaware and has been practicing law since 1987 primarily in commercial and corporate litigation, (Decl. of David A. Dorey, Esq. ¶¶ 2, 5), since graduating from Georgetown University Law Center, https://www.blankrome.com/people/david-dorey. Considering Dorey's experience, the relevant market rates for similar experience and work, and Duffy's reasonable hourly rate of $320, the Court finds an hourly rate of $320 per hour to be reasonable for Dorey. MacRegen is awarded $736 in attorney's fees for Dorey's work related to Burnette's default.[5]

---

[4] This amount results from the hours Duffy, Whitlatch, and Cox submitted, except for the time spent on settlement discussions, multiplied by their hourly rates.

[5] This amount results from the hours Dorey submitted, except for the block entries with redactions, multiplied by the hourly rate of $320.

For the reasons stated above, IT IS HEREBY ORDERED that Plaintiff MacRegen, Inc.'s Motion for Attorneys' Fees and Costs [Doc. #20] is GRANTED IN PART AND DENIED IN PART in that MacRegen, Inc. is awarded $8,490 in attorney's fees.

This the 2nd of June, 2021.

/s/ N. Carlton Tilley, Jr.
Senior United States District Judge